891 A.2d 1267

**Renee SNIZASKI, Widow of Randy Snizaski, Deceased, Appellant**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (ROX COAL COMPANY), Appellees.**

Supreme Court of Pennsylvania.

Re–Submitted March 16, 2005.

Decided Feb. 22, 2006.

148

Fred C. Jug, Pittsburgh, for Renee Snizaski, appellant.

Pamela G. Cochenour, Pittsburgh, for Rox Coal Co., appellee.

Richard C. Lengler, Harrisburg, for W.C.A.B., appellee.

Before: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

This appeal presents the question of whether the Workers' Compensation Judge ("WCJ") erred in granting a claimant's penalty petition against an employer who failed to pay a workers' compensation award within thirty (30) days of the decision of the Workers' Compensation Appeal Board ("the Board") awarding the benefit, in alleged violation of Section 428 of the Workers' Compensation Act ("the Act"),[1] but where the employer failed to pay the award in reliance upon a supersedeas request it timely filed pursuant to Section 111.22 of the Pennsylvania Administrative Code. 34 Pa.Code § 111.22.[2] This matter requires this Court to address an alleged tension between the Act's penalty provisions and the Board's supersedeas regulations. The Commonwealth Court affirmed the Board's holding that the WCJ erred in awarding a penalty for the period during which the employer's supersedeas request was pending before the Board. For the reasons

1. Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.4, 2501–2626). Section 428 provides that an employer is subject to a default judgment if it is in default of a compensation obligation for thirty (30) days or more. 77 P.S. § 921.

2. The Board's regulations in effect at the times pertinent to this case provided that an application for supersedeas must be filed within the time allowed by law for an appeal, which respectively meant twenty (20) days in the case of appeals from the WCJ's decision, 77 P.S. § 853, and thirty (30) days in the case of appeals from a Board order to the Commonwealth Court, Pa. R.A.P. 1512(a) (governing petitions for review). See 32 Pa. B. 1518 (Mar. 23, 2002). (The Board amended the regulations on December 7, 2002; the current regulation is found at 34 Pa.Code § 111.22). The regulations permitted the opposing party to file an answer to the supersedeas request within ten (10) days, 34 Pa.Code § 111.23; and afforded the Board 20 days to render a decision or, if no decision was timely rendered, the request would be deemed denied. 34 Pa.Code § 1124(b). The regulations thus contemplate a decision on a supersedeas request within 50 days, in the case of appeals from a WCJ, or 60 days, in the case of appeals from the Board.

set forth below, we agree that where, as here, an employer timely files a request for supersedeas pursuant to the Board's regulations, it cannot be subject to a penalty award for failing to pay the underlying benefit during the pendency of the supersedeas petition. Accordingly, we affirm.

Claimant Renee Snizaski ("Claimant") is the widow of Randy Snizaski ("decedent"), who was employed as a coal mine superintendent for Rox Coal Company ("Employer"). On May 7, 1996, decedent died in a one-car motor vehicle accident while on his way to work. Claimant filed a fatal claim petition alleging that her husband's death was compensable under the Act. The WCJ denied the petition. On October 21, 1999, the Board reversed and remanded for the award and computation of benefits. Employer petitioned for reconsideration. On June 13, 2000, the Board denied Employer's petition, computed the amount of benefits due, and ordered Employer to pay Claimant and her children weekly compensation at a rate of $527.

On July 6, 2000, Employer appealed to the Commonwealth Court, and also filed an application for supersedeas with the Board.[3] After the expiration of 30 days from the Board's award of benefits, Claimant's counsel demanded payment from Employer. Employer responded that it was not required to make payment while its supersedeas request was pending. Shortly thereafter, however, on July 25, 2000, 42 days after entry of the award, Employer paid Claimant in full (over $147,000). On July 31, 2000, the Board entered a timely order denying Employer's petition for supersedeas. On September 8, 2000, the Commonwealth Court likewise denied Employer's subsequent application for supersedeas.

On November 13, 2000, Claimant filed a penalty petition alleging that Employer had failed to tender payment within 30

3. The Commonwealth Court ultimately affirmed the Board's decision awarding benefits. *Rox Coal Co. v. Workers' Compensation Appeal Bd. (Snizaski)*, 768 A.2d 384 (Pa.Cmwlth.2001). Upon Employer's further petition, this Court granted review and affirmed the Commonwealth Court. *Rox Coal Co. v. Workers' Compensation Appeal Bd. (Snizaski)*, 570 Pa.60, 807 A.2d 906 (2002). In the prior appeal, this Court considered three questions, none of which are relevant here.

days of the Board's June 13, 2000 order, and thus was in default pursuant to Section 428. Employer denied that its payment was late, noting the pendency of its application for supersedeas, and arguing that the Board's regulations contemplate that an Employer's obligation to make payment is stayed in such a circumstance. Employer further argued that, even assuming it was required to commence payment during the pendency of its supersedeas application, a penalty assessment was inappropriate because its payment, at worst, was only 12 days late.

The WCJ granted Claimant's penalty petition, awarding a penalty of ten percent, or $14,771.92, as well as attorney's fees of $2,810.80.[4] The WCJ held that Employer's payment on July 25, 2000 was late as a matter of law, deeming the supersedeas request pending before the Board to be irrelevant to the penalty question. The WCJ believed that the filing of an appeal and request for a supersedeas alone were insufficient to suspend an employer's obligation to pay benefits under the Act. Instead, only an actual grant of supersedeas was sufficient.

Employer appealed to the Board, which reversed the penalty award and grant of attorney's fees, holding that there was no violation of the Act because Employer had no obligation to pay while its timely supersedeas request was pending. Claimant then appealed to the Commonwealth Court. Claimant relied upon the 2–1 panel decision in *Hoover v. Workers' Compensation Appeal Bd. (ABF Freight Systems)*, 820 A.2d 843 (Pa.Cmwlth.2003), where the panel majority held that a WCJ did not abuse his discretion in awarding a penalty for an employer's failure to pay an award within 30 days, notwithstanding that a supersedeas request was filed and pending. Employer countered that *Hoover* was wrongly decided and should be overruled. Employer reasoned that, although the Act authorizes penalties at the discretion of the WCJ, such penalties are not mandatory. Employer submitted that it was

---

4. The ten percent penalty awarded was the maximum allowable under the Act, in the absence of "unreasonable or excessive delays," in which case a penalty of up to fifty percent is authorized. 77 P.S. § 991(d)(i).

an abuse of discretion for the WCJ to penalize it where it had relied in good faith upon the Board's supersedeas regulations.

The Commonwealth Court affirmed the Board in a 6–1, *en banc* published opinion authored by the Honorable Dan Pellegrini. *Snizaski v. Workers' Compensation Appeal Bd. (Rox Coal Co.)*, 847 A.2d 139 (Pa.Cmwlth.2004).[5] The court agreed with Employer that *Hoover* was wrongly decided, and thus overruled that panel decision. The majority noted that *Hoover* had relied on *Cunningham v. Workmen's Compensation Appeal Bd. (Inglis House)*, 156 Pa.Cmwlth. 241, 627 A.2d 218 (1993) and *Crucible, Inc. v. Workmen's Compensation Appeal Bd. (Vinovich)*, 713 A.2d 749 (Pa.Cmwlth.1998), neither of which raised the issue of whether a penalty award is appropriate where the employer had relied upon the supersedeas procedure contemplated by the Board's regulations. The majority further explained that, in *Candito v. Workers' Compensation Appeal Bd. (City of Philadelphia)*, 785 A.2d 1106 (Pa.Cmwlth.2001), *appeals denied*, 572 Pa. 711, 813 A.2d 845 (2002) and 572 Pa. 726, 814 A.2d 678 (2002), the panel had held that it was not an abuse of discretion for a WCJ to deny a penalty petition where an employer had failed to pay compensation benefits within 30 days of the award because a request for supersedeas was pending before the Commonwealth Court (a request which that court ultimately granted). The *Candito* panel reasoned that, "[t]o hold that an employer is liable for penalties for not paying compensation when its request for supersedeas is pending is, in effect, to make an employer's right to seek a supersedeas in most instances a nullity." *Candito*, 785 A.2d at 1110.

The majority below concluded that, in accordance with the reasoning in *Candito*, *Hoover* should be overruled because the *Hoover* panel had failed to adequately consider the employer's reliance upon the Board's duly-promulgated regulations governing supersedeas. Because the Board's regulations "in effect, purport to stay an employer's obligation to pay" during the pendency of a supersedeas request, the majority held that it was an abuse of discretion for the WCJ to award penalties

5. Judge Friedman dissented.

in the case *sub judice.* Claimant's request for reargument was denied and this Court granted discretionary review.

In workers' compensation appeals, this Court will affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed or that any necessary finding of fact is not supported by substantial evidence of record. 2 Pa.C.S. § 704; *Colpetzer v. Workers' Compensation Appeal Bd. (Standard Steel)*, 582 Pa. 295, 870 A.2d 875, 882 (collecting cases). The pertinent historical facts in the case *sub judice* are undisputed and neither party has alleged a constitutional violation or that an agency practice or procedure was not followed. Nor does Claimant question the Board's underlying power to grant a supersedeas in appeals like this. Instead, the question is a purely legal one concerning whether it is an error of law or an abuse of discretion for a WCJ to assess a penalty against an employer who fails to pay compensation benefits within 30 days of an award, where the employer has timely availed itself of the supersedeas procedure outlined in 34 Pa.Code §§ 111.22–111.24. The issue as presented by Claimant primarily poses a question of statutory construction and, as such, this Court's review is plenary. *Colpetzer.*

Claimant argues that the plain language of the Act establishes that Employer was in default, which warranted a penalty, and that the Act overrides any contrary suggestion deriving from the Board's regulations. Claimant relies upon Section 428, which provides as follows:

> Whenever the employer, who has accepted and complied with the provisions of section three hundred five, shall be in default in compensation payments for thirty days or more, the employe or dependents entitled to compensation thereunder may file a certified copy of the agreement and the order of the department approving the same or of the award or order with the prothonotary of the court of common pleas of any county, and the prothonotary shall enter the entire balance payable under the agreement, award or order to be payable to the employe or his dependents, as a judgment

against the employer or insurer liable under such agreement or award. Where the compensation so payable is for a total and permanent disability, the judgment shall be in the amount of thirty thousand dollars less such amount as the employer shall have actually paid pursuant to such agreement or award. Such judgment shall be a lien against property of the employer or insurer liable under such agreement or award and execution may issue thereon forthwith.

77 P.S. § 921 (footnote omitted). Claimant posits that Section 428 requires a conclusion that an employer "is in default when compensation benefits are not paid within 30 days" of the initial award of benefits. Appellant's Brief, 8 (citing 77 P.S. § 921). Section 430(b) of the Act then provides that an employer who "refuses" to make a payment provided for in a decision without seeking and actually being granted a supersedeas is subject to a penalty.[6] Claimant argues that, under the Act, only the grant of a supersedeas defers the employer's obligation to pay benefits. Claimant further notes that previous decisions of the Commonwealth Court interpreting the Act have recognized that the grant of a supersedeas does not relieve the employer's obligation to pay benefits during the period preceding entry of the supersedeas, nor does a supersedeas erase an employer's prior violations of the Act. Appellant's Brief, 8 (citing *Wausau Insurance Companies v. Workers' Compensation Appeal Bd.*, 826 A.2d 21 (Pa.Cmwlth.2003), *appeal denied*, 575 Pa. 694, 835 A.2d 711 (2003), and *Horner v.*

6. Section 430(b) of the Act provides:
> Any insurer or employer who terminates, decreases or refuses to make any payment provided for in the decision without filing a petition and being granted a supersedeas shall be subject to a penalty as provided in section 435, except in the case of payments terminated as provided in section 434.

77 P.S. § 971(b) (footnotes omitted). The penalty provision in Section 435, in turn, states, in relevant part:
> The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure.

77 P.S. § 991(d).

*C.S. Myers Sons, Inc.*, 721 A.2d 394 (Pa.Cmwlth.1998), *appeal denied,* 559 Pa. 682, 739 A.2d 545 (1999)).

Claimant further argues that the Board's regulations do not state that the employer may avoid a penalty by filing a supersedeas request. Indeed, in Claimant's view, the Board's regulations do not address or resolve the substantive issue of penalties at all; rather, they merely govern the procedural question of the time period to file an appeal and a request for supersedeas following the award of benefits. In contrast, Claimant argues, the substantive provisions of the Act address the issue of penalties. Claimant argues that, the General Assembly having addressed the question of penalties, only that body has the authority to change or amend the law regarding the effect of a timely supersedeas request on an employer's obligation to pay an award.

On the question of whether the WCJ abused his discretion in granting the penalty petition in this case, Claimant notes that Employer waited more than 20 days to file the supersedeas request, thus making it unlikely that the request would be decided within thirty days. Claimant also suggests that a penalty was appropriate because supersedeas requests should not be filed in every case, but instead should be reserved for those cases where strong authority exists for the request. Claimant argues that Employer can cite no such authority here. In addition, Claimant notes that the twelve-day delay here deprived a widow and her four children of benefits they had already waited over four years to receive. Claimant concludes that, because Employer violated the Act, alleged no valid substantive authority in favor of supersedeas, and did not act diligently enough to ensure a decision within a thirty-day time frame, the WCJ's penalty award was not an abuse of discretion.

Employer and the Board have filed separate appellee briefs. Employer notes that Section 428 speaks in terms of "default in compensation payments," without purporting to define when the obligation to make an awarded compensation payment can be said to begin. Employer then argues that it cannot be deemed to have been in such "default" because it had exer-

cised its right, a right specifically granted it by administrative regulation, to seek a supersedeas. Thus, in Employer's view, its obligation to pay Claimant arose, at the earliest, only when supersedeas was denied. Employer further argues that, under its reading of Section 428, there is no tension between the Act and the Board's validly-adopted supersedeas regulations because the Act (which is silent on when the obligation arises) and the regulations merely establish that an employer's obligation to pay does not arise, in a case where supersedeas is timely sought, until the request is denied by the Board or is deemed denied. Because Employer here paid the award before the Board even ruled on its supersedeas request, Employer argues that it cannot be deemed to have been in default, and thus, no penalty can issue. Employer concludes that, "[a]n employer who fully complies with the Board's Regulations should not be penalized for having done so." Brief for Appellee Rox Coal, 13.

The Board's Brief echoes and expounds upon Employer's arguments. The Board notes that, under Section 435(b) of the Act, penalties are only permitted where "there has not been compliance with this Act or rules or regulations promulgated thereunder." 77 P.S. § 991(b). The Board reiterates that Section 428 of the Act does not define when the obligation to pay begins and that, in addressing this point of when a default occurs, the Act should be read *in pari materia* with the Board's supersedeas regulations, which fill that gap. Thus, Section 428 can be fully harmonized with the regulations by recognizing that the Employer's obligation to pay runs from the Board's denial or deemed denial in the case of a timely supersedeas request. Because Employer here acted in reliance upon those regulations, the Board argues that there is no predicate violation of the Act and regulations which could warrant an assessment of penalties.

The Board also argues that its supersedeas regulations were validly adopted. Section 435(c) of the Act grants the Board express authority to "establish rules of procedure, consistent with this act, which are reasonably calculated to expedite the hearing and determination of appeals to the board and to

insure full payment of compensation when due." 77 P.S. § 991(c). The Board notes that it is undisputed that its regulations were adopted in full compliance with the Commonwealth Documents Law, 45 P.S. §§ 1102–1208.[7] The Board notes that substantive regulations which are properly enacted under the Documents Law have the force of law and enjoy a general presumption of reasonableness. Brief for Appellee Board, 11 (*citing Borough of Pottstown v. Pennsylvania Mun. Ret. Bd.,* 551 Pa. 605, 712 A.2d 741, 743 (1998)). The Board further cites to case authority recognizing that, when a regulation is the product of an agency's rule-making power, it is to be treated as having the same force as a statute if (a) it is within the agency's granted power; (b) it is issued pursuant to proper procedures; and (c) it is reasonable. *Id.* (*citing Pennsylvania Human Relations Comm'n v. Uniontown Area School District,* 455 Pa. 52, 313 A.2d 156, 169 (1973) (treatise citation omitted)). The Board submits that its regulations satisfy all of the procedural requirements necessary for them to be deemed to have force of law.

The Board also provides some helpful perspective. It notes that the notion of a hard and fast rule fixing the employer's obligation to pay, and the beginning of the default period, as beginning on the thirtieth day after the WCJ or Board first announces its benefit award is a product of Commonwealth Court decisional law involving awards rendered before the Board promulgated its supersedeas regulations. *See Cunningham v. Workers' Compensation Appeal Bd. (Inglis House),* 156 Pa.Cmwlth. 241, 627 A.2d 218 (1993).[8] In light of the timing of the decision, the *Cunningham* court was left to fill that gap and fix the point of obligation in the absence of any binding legislative or administrative direction. In the Board's view, the *en banc* decision in the case *sub judice*

7. "The short title of the law was eliminated by subsequent amendment; however, it remains the prevailing convention used for sake of reference." *Borough of Pottstown v. Pennsylvania Mun. Ret. Bd.,* 551 Pa. 605, 712 A.2d 741, 743 n. 7 (1998).

8. Although *Cunningham* was decided in 1993, the decision of the referee (now WCJ) in the case was rendered in June, 1987. The Board first adopted regulations governing supersedeas in 1989.

properly incorporated the Board's regulations into the equation, and wisely abandoned what had proven to be uneven and *ad hoc* judicial attempts to align *Cunningham's* strict 30–day rule with the 50–day (appeal from the WCJ to the Board) or 60–day (appeal from the Board to Commonwealth Court) decisional time-frame contemplated by the Board's supersedeas regulations. The Board describes the previous problem, and the solution accepted below, as follows:

> [T]he Commonwealth Court had previously fashioned a somewhat uneven rule, whereby an employer who does not pay compensation within 30 days of the award, but who has a supersedeas application pending with the Board, may be retrospectively absolved of liability for penalties if a supersedeas is ultimately *granted. Candito*[, *supra.*] On the other hand, the Commonwealth Court tolerated the assessment of penalties if a supersedeas was later *denied. Hoover*[, *supra.*] In other words, the employer's liability for penalties was controlled by a condition subsequent.
>
> The irrationality of this uneven rule was best borne out by the respective facts of *Candito* and *Hoover.* In *Candito,* an employer delaying payment 52 days before receiving a supersedeas from the Commonwealth Court, incurred no penalty; whereas the employer in *Hoover* was assessed a ten percent penalty on indemnity benefits for a delay of six days in mailing the claimant's check. Both cases paradoxically encouraged employers to engage in what *Cunningham* deemed a violation of the Act. The *en banc* panel below sensibly eliminated this paradox by overruling *Hoover,* and giving greater weight to the Board's regulations in defining the employer's obligation to pay an award of compensation pending an application for supersedeas.

Brief for Appellee Board, 7–8 (emphases original).

Finally, the Board submits that Claimant's absolutist position—*i.e.,* if the Board will not or cannot compress the supersedeas process from the existing 50–60–day time frame into a 30–day time frame, then employers should file for supersedeas immediately and should pay awards before the supersedeas is decided, if necessary, to protect themselves—would deprive

the Board of a meaningful opportunity to carry out its supersedeas power. The Board notes that its regulations balance the need for a prompt decision with an opportunity for the employer to make a meaningful decision whether to appeal and seek supersedeas, an opportunity for the claimant's meaningful response, and an opportunity for the Board (which consists of fifteen members) to deliberate and reach an informed majority decision. In the Board's view, public policy should disfavor forcing parties and the tribunal to rush matters in order to take advantage of the Board's reasonable supersedeas regulations. In addition, with respect to Claimant's argument that supersedeas should only be sought by employers in rare cases where the employer has specific authority in support of its position, the Board notes that Claimant fails to realize that its supersedeas regulations already incorporate the familiar and exacting stay standard devised by this Court in *Pennsylvania Pub. Util. Comm'n. v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983).[9]

The Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, directs that the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. §§ 1903(a), 1921(b). The clearest indication of legislative intent is generally the plain language of a statute. *See, e.g., Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted). When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent. *Pennsyl-*

9. The Board's regulations provide that a supersedeas request should include, *inter alia,* "relevant information for the Board's consideration in determining whether the supersedeas request meets the following standard:"

> (i) The petitioner makes a strong showing that it is likely to prevail on the merits.
> (ii) The petitioner shows that, without the requested relief, it will suffer irreparable injury.
> (iii) The issuance of a stay will not substantially harm other interested parties in the proceeding.
> (iv) The issuance of a stay will not adversely affect the public interest.

34 Pa.Code § 111.21(a)(6).

*vania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995). It is only when the "words of the statute are not explicit" on the point at issue that resort to statutory construction is appropriate. 1 Pa.C.S. § 1921(c); *see Commonwealth v. Packer,* 568 Pa. 481, 798 A.2d 192, 196 (2002). Courts must also read statutes, if possible, to give effect to all of their provisions. 1 Pa.C.S. § 1921(a). Thus, courts should not interpret the words of a statute in isolation from each other, but rather, in light of the context in which they appear. *See O'Rourke v. Commonwealth, Dep't of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001). Finally, when statutes or parts of statutes relate to the same persons or things, or the same class of persons or things, they are *in pari materia* and are to be construed together. 1 Pa.C.S. § 1932; *see Salazar v. Allstate Ins. Co.,* 549 Pa. 658, 702 A.2d 1038, 1041 (1997).

We are persuaded by the Board's argument on the proper interplay of its regulations and the provisions of the Act. Under the statute, the power to assess a penalty is dependent upon the party violating the Act or pertinent rules and regulations. 77 P.S. § 991(d). One way an employer may violate the Act, and become "subject to a penalty," is to "terminate[ ], decrease[ ] or refuse[ ] to make" a payment provided for in a compensation "decision," in the absence of a supersedeas being sought and actually granted. *Id.* § 971(b). Section 428, which is entitled, "Final judgment on default in payments; entry in common pleas; lien of judgment and execution thereon," does not separately address or authorize penalties. Instead, that Section grants a claimant the right to secure a judgment by default if the employer is in "default of compensation payments for thirty days or more." *Id.* § 921. However, Section 428 does not address what amounts to a "default," such that the period for measuring the 30–day default period may be ascertained.

Claimant reads the plain language of Section 428 as if it granted an employer thirty days to pay a compensation award without fear of penalty, with a penalty-triggering "de-

fault" being deemed to occur only after the thirtieth day from the award of compensation has passed. Thus, in Claimant's view, the Act contemplates a thirty-day period in which an employer (or insurer) may pursue a supersedeas without fear of penalty. But, that is not how either Section 428, or the Act's penalty provisions, actually read. Section 428 does not address the point where a default occurs, much less fix that default at thirty days from judgment; instead, that Section **assumes** a default and then addresses the separate question of the potential summary remedy afforded to claimants once that default **has persisted** for thirty days. By the same token, the penalty provisions in the Act are not made contingent upon the expiration of thirty-day grace periods following a violation. To the contrary, Section 430(b) makes an insurer or employer "subject to a penalty" upon termination, increase, or refusal to pay an award, with no time-qualification or grace period. Similarly, Section 435 authorizes tribunals to impose penalties for "violations," without addressing grace periods. Under the statutory construct, then, a penalty is at least theoretically available the very day a default occurs; thus, a "refusal to make a payment" could warrant a penalty if it persisted for a single day. In short, it is apparent that Section 428 of the Act does not set forth the thirty-day, penalty-free supersedeas construct advanced by Claimant (and accepted by the Commonwealth Court).

The Act does, however, recognize that an employer or insurer may seek a supersedeas. *See, e.g.,* 77 P.S. § 971(b). In the absence of the Act setting forth a procedure or timeframe for considering a request for supersedeas, we perceive no tension between the Board's regulations and the statute. The Act duly authorizes the Board to adopt procedures and rules "which are reasonably calculated to expedite the hearing and determination of appeals to the board and to insure full payment of compensation when due." 77 P.S. § 991(c). The Board's regulations governing supersedeas practice are both necessary and complementary to the Act and this delegation of authority, as they filled the statutory void by adopting a procedure which would ensure the timely resolution of super-

sedeas requests. The Board's regulations contemplate that the entire procedure from supersedeas request to a ruling or deemed denial, will take a maximum of fifty days (in the case of an appeal from the WCJ to the Board), or sixty days (in the case of an appeal from the Board to the Commonwealth Court). Claimant does not dispute that these regulations were properly enacted and adopted under the Commonwealth Documents law, as well as the Regulatory Review Act.[10] Notably, such substantive regulations, when properly enacted under the Commonwealth Documents Law, have the force of law and enjoy a general presumption of reasonableness:

> Where an agency, acting pursuant to delegated legislative authority, seeks to establish a substantive rule creating a controlling standard of conduct, it must comply with the provisions of the Commonwealth Documents Law. That statute sets forth formal procedures for notice, comment and ultimate promulgation in connection with the making of rules that establish new law, rights or duties. Such substantive regulations, sometimes known as legislative rules, when properly enacted under the Commonwealth Documents Law, have the force of law, *Commonwealth v. DePasquale*, 509 Pa. 183, 187, 501 A.2d 626, 628 (1985) (citation omitted), and enjoy a general presumption of reasonableness. *See Commonwealth, Dep't of Environmental Resources v. Locust Point Quarries, Inc.,* 483 Pa. 350, 360, 396 A.2d 1205, 1210 (1979).

*Borough of Pottstown,* 712 A.2d at 743 (footnote and other citation omitted).

When the Act and the Board's supersedeas regulations are read *in pari materia,* the logical conclusion is that an employer can be deemed in default only if it fails to seek supersedeas while pursuing additional review or refuses to make a compensation payment after its supersedeas request is denied. To hold otherwise would render the Board's supersedeas regulations and authority a nullity. Moreover, we agree with the Commonwealth Court below that it is absurd and

10. Act of June 25, 1982, P.L. 633, No. 181, *as reenacted and amended,* 71 P.S. §§ 745.1–745.14.

unreasonable to construe the Act as if it intended that the prospect of a penalty assessment should depend upon the unpredictable fortuity of the outcome of the supersedeas request. Penalties should be tied to some discernible and avoidable wrongful conduct.[11, 12]

 For the reasons set forth above, this Court finds that an employer who fails to pay a compensation award during the pendency of a timely-filed supersedeas petition authorized under the Board's regulations is not subject to a penalty assessment. Accordingly, we affirm the order of the Commonwealth Court.

Affirmed.

Chief Justice CAPPY and Justices SAYLOR, EAKIN and BAER join the opinion.

Justice BALDWIN did not participate in the consideration or decision of this case.

Justice NEWMAN files a dissenting opinion.

Justice NEWMAN dissenting.

The Majority concludes that, "where, as here, an employer timely files a request for supersedeas pursuant to the Board's regulations, it cannot be subject to a penalty award for failing

11. We recognize that Section 430 of the Act, which addresses the effect of an appeal upon a lien of judgment, states that an employer who "terminates, decreases or refuses" to make a payment is "subject to" a penalty unless a petition is filed and a supersedeas is granted. 77 P.S. § 971. But, for the reasons stated in the text, we conclude that where the reason for a failure to immediately pay an award is the pendency of a supersedeas request, it is not apparent that a "default," or "refusal to pay," can be deemed to have occurred. Moreover, where the only delay in payment is that which is specifically contemplated in the regulations to permit the orderly determination of a timely supersedeas request, a penalty is not appropriate.

12. We note that, even if this Court were to conclude that a WCJ and/or the Board has the discretionary power to assess a penalty based upon a delay in payment arising from a supersedeas request, it would be difficult to view it as anything but an abuse of discretion to assess a penalty in an instance where the employer acted in good faith reliance upon the supersedeas procedure contemplated in the Board's regulations.

to pay the underlying benefit during the pendency of the supersedeas petition." (Opinion of Majority at 151, 891 A.2d at 1270.) I believe this conclusion is inconsistent with the governing provisions of the Workers' Compensation Act (Act) [1] and must respectfully dissent.

The June 13, 2000 Order of the Board to pay Claimant compensation at a rate of $527.00 per week triggered the legal duty of Employer to begin paying benefits to Claimant within thirty days pursuant to Section 428 of the Act.[2] On July 6, 2000, Employer filed a timely Application for Supersedeas with the Board and an appeal with the Commonwealth Court.[3] It is beyond cavil that Claimant was entitled to benefits within thirty days of the June 13, 2000 Order of the Board and that Employer did not commence payment of benefits within thirty days. *See* 77 P.S. § 921. Employer argued, and the Majority concludes, that the filing of a supersedeas request tolls the obligation of Employer to pay benefits until the supersedeas request is either decided or deemed denied. This, however, is contrary to law and flies in the face of basic statutory construction. *See* 1 Pa.C.S. § 1901, et seq.; 1 Pa.C.S. § 1921 ("when the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursing its spirit.").

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

2. Section 428 of the Act, 77 P.S. § 921, states:

 Whenever the employer ... shall be in default in compensation payments for thirty days or more, the employe or dependents entitled to compensation thereunder may file a certified copy of the agreement and the order of the department approving the same or of the award or order with the prothonotary of the court of common pleas of any county, and the prothonotary shall enter the entire balance payable under the agreement, award or order to be payable to the employe or his dependents, as a judgment against the employer or insurer liable under such agreement or award.... Such judgment shall be a lien against property of the employer or insurer liable under such agreement or award and execution may issue thereon forthwith.

3. Pursuant to Pennsylvania Rule of Appellate Procedure 1781(a), where a party has appealed a governmental determination to a reviewing court, an application for a stay or supersedeas must be filed with the deciding tribunal in the first instance.

The Majority determines that the term "default" is undefined in Section 428 and therefore, undefined in the Act. The Majority reasons that, because Section 428 does not define when "default" occurs, the regulations of the Board rather than the provisions of the Act should be utilized to define the point in time at which the employer has an obligation to pay benefits. This reasoning is critically flawed and does not comport with the plain language provisions of the Act. Moreover, even if "default" were an ambiguous term, resort to a definition is preferable to the wholesale adoption of the Board regulations, which themselves do not define "default." Further, there is no argument that the term "default" is ambiguous to require the Majority to depart from the clear language and meaning of the statute.

A "default" is defined in *Black's Law Dictionary* as a failure to perform a legal duty. *Black's Law Dictionary* 428 (7th ed. 1999). Within the workers' compensation scheme, there are many legal duties that can be imposed upon an employer and from which the employer may default. Several examples immediately come to mind—issuance of a notice of compensation payable or notice of compensation denial, payment of the claimant's average weekly wage, payment of medical expenses, payment of fatal claim benefits, and payment of specific loss benefits. Determining when the obligation arises in each of these major areas is not difficult. The obligation arises when the order creating the legal duty is filed. In the instant matter, the obligation to pay fatal claim benefits arose on June 13, 2000, when the Board entered its Order denying reconsideration and awarding benefits to Claimant in a stated amount.[4]

The mere filing of a supersedeas request is not enough to suspend Employer's obligation to remit benefit payments pursuant to the Act. That request must be granted. *See* 77 P.S. § 991. The General Assembly, thus, anticipated the precise situation before us and has indicated that "a petition to

4. Although the Board awarded benefits on October 21, 1999, it remanded the matter to the WCJ for a calculation of benefits. Employer was not in default of that Order because the amount of the benefit was not yet known.

terminate, suspend or modify a compensation agreement . . . or award as provided in this section shall not automatically operate as a supersedeas. . . ." Section 413, 77 P.S. § 774(2). Further, the Act mandates that "[a]ny insurer who suspends, terminates or decreases payments of compensation without . . . having requested **and been granted** a supersedeas . . . shall be subject to penalty as provided in Section 435 [77 P.S. § 991]." Section 413(b), 77 P.S. § 774.1 (emphasis added). In other words, the employer is not entitled to self-help. An employer who is adjudicated responsible for workers' compensation payments must commence those payments within thirty days. The employer that fails to commence payment within thirty days, has, *sua sponte,* suspended those benefits and is in default. I find myself bound by the plain language of the statute, which clearly uses the conjunctive "and" *requiring* the granting of a supersedeas request before benefits may be halted.

Section 428 of the Act provides that an employer violates the Act if it fails to make payments within thirty days of the date on which its obligation to pay arises. There is no exception contained in the statute that would toll that limitations period. Section 430 of the Act provides that discretionary penalties may be imposed on an employer that fails to pay benefits within the thirty-day time period. 77 P.S. § 971(b). Nothing in the regulations states that a request for supersedeas tolls the time constraints of Section 428. Nothing in Section 428 indicates that its provisions may be tolled by filing a request for supersedeas. Moreover, a grant of supersedeas does not relate back to the date on which the request was filed.

Further support for this interpretation is supplied by the rules relative to a supersedeas. It is axiomatic that a supersedeas provides prospective, not retroactive, relief. Therefore, once the obligation to pay benefits arises, an employer must continue to pay those benefits until the supersedeas is granted. Once granted, the supersedeas does not provide retroactive relief for the employer, but only permits the employer to cease payment of some or all benefits from that point forward.

If there was no entitlement to benefits during the period between the request for supersedeas and the resolution of the appeal, the employer can seek reimbursement from the Supersedeas Fund.

Hence, it is sophistic to toll the thirty-day time period when an application for supersedeas is pending, because if the supersedeas is granted, it will not relate back to the date upon which the application was filed. While instinctively it seems unfair to penalize an employer for following the regulations promulgated by the Bureau, the problem lies in the application by the Majority of the regulations themselves. The request for supersedeas operates independently of the obligation to pay benefits and the default of that obligation.[5]

The Majority attempts to shoehorn the process for securing a supersedeas into the thirty-day grace period provided by Section 428. When unable to accomplish this, the Majority simply declares that the thirty-day period, in which to comply with the payment of benefits, is tolled pending the outcome of the supersedeas request. This is clearly inconsistent with the Act, particularly as regulations promulgated by a government entity that are inconsistent with a statute are invalid. *Suburban Manor/Highland Hall Care Center v. Dep't of Pub. Welfare*, 545 Pa. 159, 680 A.2d 867 (1996). No matter how much appeal the Majority finds in the regulations, it is axiomatic that a statute is the law and trumps agency regulations, even properly promulgated ones.

Failure in the instant matter to follow the precise language of the statute subjects the Employer to penalties. I agree with Claimant in this regard that the regulations promulgated by the Board are merely procedural in nature and function as a guide for the litigant on the timing and submissions required as well as defining the decisional timeframe. I believe that Section 428, which penalizes an employer that utilizes self-help

**5.** This is true throughout the workers' compensation scheme. When an employer files a petition to suspend benefits, or one to modify benefits with a Section 413 request for supersedeas, the employer is not entitled to unilaterally suspend or modify benefits just because it filed a request for supersedeas until a hearing before the WCJ resolves the petition. The request there, as here, must be granted before it becomes effective.

to suspend or terminate benefit payments, operates independently of the application for supersedeas.

The Majority agrees with the Board that requiring an employer to make payments required by an award without waiting for the outcome of the supersedeas request denies the employer a meaningful supersedeas review. Thus, despite the clear and unambiguous language of the Act, the Majority has implemented a temporary supersedeas pending the outcome of the application for supersedeas. The logical extension of this principle would mean that any time an employer files a request for supersedeas, it is entitled to an automatic supersedeas pending the review of its request. This procedure was invalidated in *Baksalary v. Smith,* 579 F.Supp. 218 (E.D.Pa. 1984). Before *Baksalary,* any appeal acted as an automatic supersedeas in workers' compensation cases pending a decision on the appeal. The federal court reasoned that the claimant acquired a property right in benefits on the date that the order granting benefits was filed. It then held that a Section 413 automatic supersedeas deprived the claimant of his or her property without due process of law. The General Assembly subsequently revised Section 413 to remove the automatic supersedeas on the filing of an appeal. 77 P.S. § 774, *amended* by the Act of June 24, 1996, P.L. 350, No. 57, § 16, effective August 22, 1996.

Employer acquired a legal duty to commence payment of benefits on June 13, 2000. It did not do so and became subject to penalties pursuant to Section 428. The request for supersedeas does not toll the payment of benefits until it is granted, but operates independently of the appeal. Accordingly, I would reverse the Order of the Commonwealth Court.